IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRADY LEE KNOTTS,

Plaintiff,

v.                                                                    Civil Action No. 1:14-CV-23

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

### A. Background

On February 5, 2014, Brady Lee Knotts filed this action under 42 U.S.C. § 405(g) for judicial review of an adverse decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commissioner filed her answer on June 12, 2014.[2] Plaintiff then filed his motion for summary judgement on July 17, 2014,[3] and the Commissioner filed her motion for summary judgement on August 14, 2014.[4] The motions are now ripe for this Court's review, and for this report and recommendation.

### B. The Pleadings

1. Plaintiff's motion for summary judgment. ECF No. 14.

---

[1] ECF No. 1.

[2] ECF No. 8.

[3] ECF No. 14.

[4] ECF No. 17.

2. Defendant's motion for summary judgement. ECF No. 17.

**C. Recommendation**

I recommend that:

1.       Mr. Knotts' Motion for Summary Judgment be **DENIED** because (1) substantial evidence supports the ALJ's finding of granting Dr. Malone's September 2, 2011, report "little weight," (2) the Appeals Council was not required to consider subsequent evidence, (3) the ALJ's credibility determination is supported by substantial evidence, and (4) the ALJ's hypothetical included all of the limitations substantiated by the evidence of record.

2.       Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

**A. Procedural History**

On March 1, 2011, Plaintiff applied for disability insurance benefits. R. 133. The application for benefits was initially denied on March 15, 2011, and upon reconsideration on August 1, 2011. R. 86, 93. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 27, 2012. R. 43. Plaintiff, who was represented by counsel, testified at the hearing. Donna McDonald, Plaintiff's girlfriend, also testified, as did a Vocational Expert ("VE"). R. 44-75. On October 3, 2012, the ALJ issued an unfavorable decision for Plaintiff finding that considering the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. R. 30. On December 13, 2013, the Appeals Council denied Plaintiff's request

for review. R. 1. Plaintiff then brought his claim to this Court.

**B. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Plaintiff was not under a disability.

On August 2, 2010, Plaintiff visited John H. Lobban, M.D.. R. 234-35. Dr. Lobban noted Plaintiff "has a history of coronary artery disease, ischemic cardiomyopathy, [and] old myocardia infarction." *Id.* During the visitation, Plaintiff reported "feeling fairly well," "not really . . . any shortness of breath," and no "chest pain, pressure or discomfort." *Id.* However, at least on one prior occasion, Plaintiff reported feeling "extremely fatigued and tired." *Id.* Dr. Lobban diagnosed Plaintiff with coronary artery disease and ischemic cardiomyopathy, hyperlipidemia, diabetes mellitus, hypertension, and atrial fibrillation. *Id.*

On September 17, 2010, Plaintiff visited James E. Malone, D.O., Plaintiff's primary care physician. R. 210. Dr. Malone assessed that Plaintiff's diabetes was "uncontrolled, but uncomplicated." *Id.* Dr. Malone agreed to write a letter requesting Plaintiff not to work the "night shift for the winter time" because it "would be detrimental to his sugars, history of coronary artery disease." *Id.*

On October 7, 2010, Dr. Lobban reported that Plaintiff was recently involved in a lawn mower accident and fractured his "maxilla as well as his jaw bone." R. 232. Plaintiff also received multiple contusions on his face. *Id.* During this appointment, Plaintiff suggested he is going "to try to file for disability" because "he just does not have any energy or stamina" at work and he "gets short winded, easily fatigued and has no energy." *Id.*

On October 29, 2010, Dr. Lobban completed a "public employees retirement system

physician's disability report" for Plaintiff affirming that Plaintiff's heart issues were "so severe that he . . . is not only unable to perform his . . . previous state employment, but also cannot, considering his . . . age, education or work experience, engage in any other kind of substantial gainful activity." R. 315.

In December 2010, Mazen Nashed, M.D., completed a "public employees retirement system board physician's disability report." R. 316. Dr. Nashed found Plaintiff suffered from ischemic cardiomyopathy, type II diabetes, dyslipidemia, and obesity. R. 318. Thus, Dr. Nashed, concluded that Plaintiff's "disability is presumed to be totally and permanently incapacitating and the requirements of the job cannot be satisfied and the member is unable to engage in any other kind of gainful substantial employment which exists at this stage." R. 318.

On February 2, 2011, Dr. Lobban noted that Plaintiff "had no chest pain, pressure, worsening dyspnea, orthopnea, [or] paroxysmal nocturnal dyspnea." R. 230. Dr. Lobban asked Plaintiff to decrease his aspirin intake. R. 231. During an April 4, 2011, appointment with Dr. Malone, Plaintiff reported no chest pain, abdominal pain, difficulty breathing, or depression, rather, he "is jus [sic] tired at times." R. 244. On August 2, 2011, Dr. Lobban noted Plaintiff "has been doing very well" and "has had no chest pain or pressure, worsening dyspnea, orthopnea, or PND. He has had no syncope, near syncope, or palpitations." R. 305.

On September 1, 2011, Plaintiff reported to Dr. Malone of having more frequent chest pain and shortness of breath. R. 311. Dr. Malone reported that Plaintiff "is clinically stable, however at risk for sudden death at any time." *Id.*

That same day, Dr. Malone completed a physical residual functional capacity questionnaire. R. 277. Dr. Malone identified depression as a psychological condition that affected Plaintiff's

physical condition. R. 278. Dr. Malone reported Plaintiff's symptoms were severe enough to frequently interfere with attention and concentration. *Id.* Dr. Malone reported Plaintiff is capable of low stress jobs. *Id.* Dr. Malone reported Plaintiff could only sit for fifteen minutes at one time and stand for only fifteen minutes at one time. *Id.* Dr. Malone found that Plaintiff would need periods of walking around during a work day, and a job that permitted shifting positions at will, and allow unscheduled breaks. R. 279. Dr. Malone found Plaintiff's legs would have to be elevated at waist high 25% of the working day. *Id.* Dr. Malone reported that Plaintiff could frequently lift less than ten pounds, but nothing ten pounds or above. R. 280. Dr. Malone estimated that Plaintiff would likely be absent more than four times a month. *Id.*

On November 3, 2011, Dr. Malone reported that Plaintiff had "[n]o chest pain . . . no shortness of breath, [and] no abdominal pain." R. 312. On February 2, 2012, Dr. Lobban reported that Plaintiff denied "any exertional chest pressure, dyspnea, near syncope, syncope, orthopnea or PND." R. 306. Dr. Lobban indicated Plaintiff was "doing well" and has "his good days and bad." *Id.* The next day, Plaintiff was examined by Dr. Malone. R. 313. During the examination, Plaintiff reported that his toes "do tingle . . . however, not consistently." *Id.* Additionally, Plaintiff complained about his February 2, 2012 appointment with Dr. Lobban, claiming Dr. Lobban "did not do much" other than "listen[] to his lungs . . . ." *Id.* However, Plaintiff again denied chest pain, shortness of breath, or abdominal pain. *Id.* On May 2012, Dr. Malone reported Plaintiff had no "chest pressure or heaviness." R. 314.

On August 14, 2012, Gina Rogers, PAC, reported Plaintiff "has decreased energy level" but "no new cardiac complaints." R. 319. Ms. Rogers noted that Plaintiff "has been trying to fight for disability." *Id.* On August 20, 2012, Plaintiff reported to Dr. Malone of worsening fatigue. R. 324.

On August 24, 2012, Plaintiff complained to Dr. Malone of having fatigue, joint pain, shortness of breath, and dizziness. R. 327. On September 11, 2012, Plaintiff was again examined by Ms. Rogers. R. 342. Ms. Rogers noted that Plaintiff complained of "decreased energy level" and more shortness of breath compared to the previous year. *Id.*

On September 19, 2012, Plaintiff underwent a cardiac catheterization, performed by Dr. Lobban. R. 350. After the procedure, Dr. Lobban concluded Plaintiff had "[t]hree-vessel coronary artery disease with moderate to moderately severe left ventricular dysfunction." R. 351. Also, Dr. Lobban concluded that "[t]he anterior wall appears much more viable . . . than when compared to that obtained in [a] 2008 angiography." *Id.*

After the ALJ's October 3, 2012, unfavorable decision, Dr. Lobban wrote a letter to Plaintiff's counsel, indicating that he believes Plaintiff "does indeed qualify for cardiovascular disability" because "he would exhaust quickly and would, therefore, be inappropriate for that approach in that he could not accomplish a day's work at any pace." R. 352.

## C. Testimonial Evidence

Testimony was taken at the hearing held on September 27, 2012. R. 43. The following portions of the testimony are relevant to the disposition of this case.

Plaintiff testified that he was born on October 3, 1958 and, at the time of the hearing, was divorced. R. 47. Plaintiff has two children. R. 48. At the time of the hearing one child was serving in the military and the other was a minor. *Id.* Plaintiff's minor child participated in sports and Plaintiff attended every game. R. 49. Plaintiff stated he drove a least once a day. R. 51. Plaintiff drove to the ALJ hearing. R. 52. Plaintiff testified that he had a high school diploma. R. 53. Plaintiff receives a retirement disability pension from his former employer. *Id.*

Plaintiff testified that he is not currently working and is unable to work. R. 54 Plaintiff alleges that fatigue causes him to "wear out" and become "totally exhausted." *Id.* Plaintiff testified that he worked for the West Virginia Department of Highways for thirty years prior to his disability, primarily as a road worker, equipment operator, and foreman. R. 54-55. Plaintiff's last day of work was February 28, 2011. R. 56.

Plaintiff testified that he has heart pain every day and is diabetic. R. 57. Plaintiff claimed that he gets fatigued as he "start[s] to do anything, and [he] can't sit for very long." *Id.* If Plaintiff sits for too long, he testified his "feet and legs go numb" and, because of his medication, he will "doze off and go to sleep." *Id.* Plaintiff testified that his health has gotten worse over time. *Id.* Plaintiff testified he was scheduled for a triple bypass procedure on October 5, 2012. R. 58. Plaintiff also stated that he was in a tractor accident in 2010. *Id.*

When the ALJ inquired if Plaintiff still used a riding lawn mower and push mower, Plaintiff responded that he does not use a push mower, however, he will occasionally use riding lawn mower and then let his son finish "around the house" and his mother's home. R. 59. Next, the ALJ inquired that "[e]xhibits 20F from this year says you were using a push mower. This is from September 2012." *Id.* Plaintiff responded that if he did use a push mower, "it wasn't for very long. Just a little bit of trimming and that'd be it." *Id.*

The ALJ also asked Plaintiff is he continues to ride a bicycle. *Id.* Plaintiff testified that, "for a while," as recently as a month prior to the ALJ hearing, Plaintiff was riding a stationary bicycle, however, he now does not "have the energy . . . ." *Id.* Plaintiff testified that, last year, he was riding for ten miles, but now he is "lucky to do a mile." R. 59-60.

Due to medication, Plaintiff testified that he experiences drowsiness, sleepiness, dizziness,

and flushing. R. 60. Plaintiff also testified that when he feels "bad," he does not drive anywhere. *Id.*

After this contention , the ALJ reminded Plaintiff that he previously testified that he was "able to

drive a least once a day." *Id.* Next, the ALJ asked if Plaintiff is able to drive with side effects. *Id.*

The Plaintiff explained that he will drives sometimes, only a short distance to let his child off for

the school bus. *Id.*

Plaintiff testified that he last went hunting in Fall 2011. R. 61. Plaintiff testified that he cooks

every day, goes shopping once a week, washes the dishes every day, does laundry once a week, and

vacuums once a week. R. 63.

Plaintiff testified that, during the last years of his employment, his missed roughly three to

four days a month because of general fatigue. R. 64. Plaintiff testified that Dr. Malone has limited

Plaintiff from lifting anything over ten pounds and has cautioned Plaintiff he is at high risk for a heat

attack. R. 65.

Next, Donna McDonald testified. R. 66. Ms. McDonald has been Plaintiff's girlfriend for

over ten years. R. 67. Ms. McDonald testified that she sees Plaintiff almost every day. R. 67. "[A]t

one time," Ms. McDonald helped Plaintiff with work activities around his home. *Id.* Ms. McDonald

testified that Plaintiff "gets tired a lot. He has a lot of pain. His feet go numb, and he has to keep his

feet propped up." *Id.*

Tim Moller, a VE, also testified at the hearing. R. 68. The ALJ posed the following

hypothetical to the VE:

> Mr. Moller, assume a hypothetical individuals of the same age,
> education, and work experience as the claimant pertaining to the
> capacity to perform light work with a sit/stand option allowing the
> person to briefly, for one to two minutes, alternate sitting or standing
> positions at thirty-minute intervals without going off task, who's
> limited to occasional posturals, except no climbing of ladders, ropes,

or scaffolds, must avoid concentrated exposure to extreme cold and heat, must avoid concentrated exposure . . . to wetness and humidity, he must avoid concentrated exposure to excessive vibration, must avoid all exposure to unprotected heights, hazardous machinery and commercial driving, whose work is limited to simple, routine, and repetitive tasks requiring only simple decisions, free of fast paced production requirements with few work place change. It's my understanding that such an individual would be incapable of performing the claimant's past work as defined. Is that correct?

R. 70. The VE agreed with the ALJ's understanding that such an individual in the hypothetical would be incapable of performing Plaintiff's past work. *Id.* However, the VE identified multiple light jobs that are unskilled that complied with the ALJ's hypothetical, all with a SVP 2. R. 71. Concerning "the customary tolerances that a typical employer would have as to an employee being late to work or having unexcused or unscheduled absences," the VE testified that

workers are expected to be on time and on the job every day. They can usually miss one day a month or be late one day a month. If they're late or miss more than that on a regular basis, they'll be given two warnings. If they continue, they'd be replaced . . . .

*Id.* Concerning employee breaks during an eight hour workday, the VE explained that "[w]orkers can be off task up to ten percent of the work day . . . . Anything over and above that, if they don't maintain 90 percent productivity, they would be let go after two warnings." R. 72. During examination by Plaintiff's counsel, the VE stated that if Plaintiff needed to elevate his legs during an eight hour workday, twenty-five percent of the time, "that would eliminate the jobs" the VE offered "or any light jobs." R. 73.

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. R. 20.

At step two, the ALJ found that Plaintiff has the following severe impairments: coronary artery disease status post cardiac catheterization; remote anterior myocardial infarction; ischemic cardiomyopathy; congestive heart failure, clinically stable; obesity; diabetes mellitus; and adjustment disorder/depression. *Id.* At the third step, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of the one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. R. 21. Before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff has the residual functional capacity to

> perform light work . . . except the work must: provide a sit/stand options allowing person to briefly, one to two minutes, alternating sitting or standing positions at thirty minute intervals without going off task; entail no climbing of ladders, ropes and scaffolding and only occasional climbing or ramps or stairs, balancing, stooping, kneeling, crouching or crawling; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration and all exposure to unprotected heights, hazardous machinery and commercial driving; and be limited to simple, routine and repetitive tasks, requring only simple decisions, free of fast-paced production requirements with few work place changes.

R. 23. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. R. 29. At the final step, the ALJ found that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 30.

## IV.  THE MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Plaintiff contends the ALJ's: (1) Residual Functional Capacity assessment is unsupported by substantial evidence because the ALJ and the Appeals Council erred in evaluating the medical

opinion evidence; (2) credibility determination is unsupported by substantial evidence because the ALJ erred in assessign the required factors in determining Plaintiff's credibility; and (3) Step 5 determination is unsupported by substantial evidence because it is the result of an incomplete hypothetical.

In response, Defendant contends that: (1) substantial evidence supports the ALJ's findings that Plaintiff could perform a limited range of unskilled, light work, (2) the ALJ applied the correct legal standards in determining Plaintiff's credibility, and (3) that the Commissioner met her burden at step five of the sequential evaluation process to produce evidence of work that Plaintiff could perform.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

**C. Discussion**

1. The ALJ's Residual Functional Capacity Assessment

*a. The ALJ's Decision to Give Dr. Malone's September 1, 2011 Report "little weight"*

Plaintiff contends that the ALJ erred in giving "little weight" to Plaintiff's treating physician, Dr. Malone. Plaintiff argues that Dr. Malone's September 1, 2011 report is consistent with the medical record and supported by Dr. Malone's significant treatment history. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). "Rather, according to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also* 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927 ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). "The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter*, 993 F.2d at 35.

Here, the ALJ was permitted to give less weight to Dr. Malone's September 1, 2011 report because substantial evidence supports that the report was inconsistent with medical evidence created before and after Dr. Malone's report. On September 1, 2011, Dr. Malone completed a Physical Residual Functional Capacity Questionnaire. R. 277. In his decision, the ALJ found that this report limited Plaintiff to only sedentary exertional work, contrary to the ALJ's ultimate finding that the Plaintiff has the capacity to perform "light work." R. 23, 28. The ALJ gave this report "little weight" because he found the report had "little probative value" and was "contrary to the available evidence, [as] it overstates the [Plaintiff's limitations." R. 28.

Substantial evidence supports the ALJ's conclusion. In finding that Dr. Malone's report was "contrary," the ALJ cited medical evidence before and after Plaintiff's September 1, 2011 examination with Dr. Malone. The ALJ cited an August 2011 appointment with Dr. Lobban, where Plaintiff was described as "doing very well" and reported "no chest pain or pressure, worsening dyspnea, orthopnea, or PND." R. 28, 305. The ALJ also mentions a November 2011 appointment with Dr. Malone where Plaintiff reported that he "[f]eels good" and has "[n]o chest pain . . . no shortness of breath, [and] no abdominal pain." R. 28, 312. Dr. Malone's report was created between these two medical appointements. Furthermore, the day Dr. Malone's report was created, Plaintiff informed Dr. Malone he was "going to apply for disability." R. 311. Thus, substantial evidence supports the ALJ's finding of granting Dr. Malone's September 1, 2011, report little weight.[5]

*b. The Appeals Council's Consideration of Dr. Lobban's November 1, 2012 Letter*

Next, Plaintiff argues that the Appeals Council failed to account for Dr. Lobban's November 1, 2012, letter which discussed the alleged severity of Plaintiff's heart disease. R. 352. Plaintiff contends this letter, submitted after the ALJ's decision, justifies a remand.

On December 13, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision. R. 1. In considering Dr. Lobban's letter, the Appeals Council found that the letter "does not provide a basis for changing the Administrative Law Judge's decision" and the ALJ's decision was not reviewed. R. 2. "The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins v.*

---

[5] As an additional argument, Plaintiff contends that because Plaintiff has been approved for disability benefits from the West Virginia Consolidated Public Retirement Board, that evidence is "indicative" that the ALJ's determination was incorrect. However, only the Commissioner is "responsible for making the determination or decision about whether" Plaintiff is disabled. 20 C.F.R. § 404.1527(d).

*Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)); *see also* 20 C.F.R. § 404.970(b). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." *Id.*

Here, Dr. Lobban's letter is material and does relate to the period on or before the date of the ALJ's decision. The letter refers to Plaintiff's heart disease, which was diagnosed prior to the ALJ's decision. However, the evidence is not new. The medical information in Dr. Lobban's letter is also available in other parts of the medical record. Plaintiff himself admits that Dr. Lobben's letter, issued subsequent to the ALJ's decision, and Dr. Malone's opinion, available to the ALJ in the medical record are "similiar." ECF No. 15 *12. Thus, because Dr. Lobban's letter is not "new," the Appeals Council need not consider the subsequent evidence. *Wilkins*, 953 F.2d at 95-96.

## 2. The ALJ's Credibility Determination

In this argument, Plaintiff contends that the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining Plaintiff's credibility. Defendant argues that, in fact, the ALJ applied the correct legal standards in determining Plaintiff's credibility.

A two-part test is used for evaluating the limiting effects of subjective symptoms. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. 404.1529. First, objective medical evidence must show the existence of a medical determinable impairment "'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig,* 76 F.3d at 594 (quoting 20 C.F.R. 404.1529(b)). In other words, "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a

medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p. Second, after the claimant has met this threshold obligation of showing an impairment reasonably likely to cause the pain claimed, the adjudicator must evaluate the intensity, persistence, and limiting effects of the claimant's pain and other symptoms in order to determine the extent to which they affect her ability to work. *Craig*, 76 F. 3d at 595; 20 C.F.R. 404.1529(c)(1); SSR 96-7p. In making this evaluation, the ALJ must consider all of the available evidence, including "the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, at 595 (internal citations omitted).

While objective medical evidence of pain "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work," 20 C.F.R. 404.1529(c)(2), in many cases, symptoms, such as pain, "suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p; *see also Craig*, 76 F. 3d at 595 ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected *solely* because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.") (emphasis in original). SSR 96-7p requires that

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and

their functional effects.

*Id.*

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

Contrary to Plaintiff's contention, the record illustrates that the ALJ evaluated Plaintiff's symptoms in accordance with the two-part test in *Craig* and the factors outlined in 20 C.F.R. 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms . . . ." R. 24. At length, the ALJ addresses Plaintiff's testimony during the ALJ hearing and thoroughly details Plaintiff's medical history. R 23- 29.

17

Next, in accordance with the factors set out in 20 C.F.R. 404.1529 and SSR 96-7p, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with, the objective evidence in the record, and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."[6] R. 24.

In his decision, the ALJ found multiple inconsistencies. The ALJ noted that in February 2011 and August 2011, Plaintiff had reported that he was doing well and not experiencing chest pain or other heart related symptoms. R. 24, 230, 305. However, in September 2011, Plaintiff reported to Dr. Malone that he experienced frequent chest pain and shortness of breath. R. 24, 311. The ALJ notes that, at this point, Dr. Malone became aware that Plaintiff planned "to apply for disability." R. 24. Subsequently, in November 2011, Plaintiff again reported no chest pain or shortness of breath. *Id.*, R. 312. The ALJ also found that although Plaintiff reported that did not use a push mower, one of Plaintiff's medical providers reported that he used a push mower, albeit briefly, as recently as one month prior to the ALJ hearing. R. 26.

Although the ALJ discusses apparent inconsistencies on the record, the ALJ does write that Plaintiff's heart problems, two cardiac catheterizations, triple bypass surgery, and work record "weight positively" on Plaintiff's credibility. R. 27. Yet, the ALJ found that despite these conditions, Plaintiff "reported rather significant activities of daily living" such as hunting, cooking, domestic chores, driving, and shopping. R. 26. Therefore, a discrepancy in testimony and a negative conclusion of Plaintiff's credibility could be supported by a "reasonable mind." *Pierce*, 487 U.S. at

---

[6] In addition, the ALJ also considered "[t]he third-party testimony of the claimaint's girlfriend . . . [however] these statements come from understandably biased points of view, and they are a mere rehash of the claimant's subjective allegations, which . . . are inconsistent with the evidence as a whole." R. 24.

665.

Because the Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision here is supported by substantial evidence. *Powers*, 207 F.3d at 435; SSR 96-7P. Therefore, the ALJ correctly followed the *Craig* test in evaluating Plaintiff's subjective symptoms. Additionally, the Court finds that more than substantial evidence exists to support the ALJ's decision to discredit Plaintiff's subjective complaints.

### 3. The ALJ's Hypothetical Question to the VE

Lastly, Plaintiff argues that the VE's testimony cannot provide substantial evidence to support the ALJ's decision because the VE's testimony was based on an incomplete and unsupported hypothetical question. Specifically, Plaintiff cites that the ALJ's hypothetical did not include a limitation that Plaintiff would likely miss more than four work days per month. Defendant contends that the ALJ's hypothetical question to the VE was sufficient because the question contained all Plaintiff's limitations that are supported by the record.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). "However, the ALJ is afforded great latitude in posing hypothetical questions and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (internal quotation and citation omitted). "Therefore, based on his or her evaluation of the evidence, an ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a

claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ." *Id.*

The only objection Plaintiff has to the ALJ's hypothetical was the omission from the hypothetical that Plaintiff would likely miss more than four work days per month. In doing so, Plaintiff cites reports completed by Dr. Lobban and Dr. Malone. Plaintiff cites Dr. Malone's September 1, 2012, R. 280, report as evidence, however, this evidence was considered by the ALJ, and was afforded "little weight" in the ALJ's final determinable. R. 28. Additionally, it would be rather difficult for the ALJ to consider Dr. Lobban's December 6, 2012, report because Dr. Lobban's report was completed two months after the ALJ's decision was filed. R. 357. Thus, because the ALJ "is afforded great latitude in posing hypothetical questions," *France*, 87 F. Supp. 2d at 490, and gave little weight to the only report created prior to the ALJ's decision that supports Plaintiff's contention, the ALJ's hypothetical question to the VE included all of the limitations substantiated by the evidence of record, and the ALJ was under no obligation to include hypothetical future absences from work.

## V. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1.    Mr. Knotts' Motion for Summary Judgment be **DENIED**. ECF No. 14.

2.    Commissioner's Motion for Summary Judgment be **GRANTED** (ECF No. 17) for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of

the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: December 2, 2014        /s/ *James E. Seibert*
                                               JAMES E. SEIBERT
                                               UNITED STATES MAGISTRATE JUDGE